1  AARON M. CLEFTON, Esq.  (SBN 318680)
2  PAUL L. REIN, Esq. (SBN 43053)
   REIN & CLEFTON, Attorneys at Law
3  200 Lakeside Drive, Suite A
   Oakland, CA  94612
   Telephone:  510/832-5001
4  Facsimile:  510/832-4787
   info@reincleftonlaw.com
5
   Attorneys for Plaintiffs
6  ARTHUR RENOWITZKY and DEWAYNE JACKSON

7
                    UNITED STATES DISTRICT COURT
8
                    NORTHERN DISTRICT OF CALIFORNIA
9

10
   ARTHUR RENOWITZKY and            CASE NO. 3:21-cv-06619-JSW
11 DEWAYNE JACKSON,                 Civil Rights

12      Plaintiffs,                 **FIRST AMENDED COMPLAINT** FOR
                                    PRELIMINARY AND PERMANENT
13      v.                          INJUNCTIVE RELIEF AND DAMAGES:
                                    DENIAL OF CIVIL RIGHTS AND ACCESS TO
14 TS GURL, INC.; TS GURL           PUBLIC FACILITIES TO PHYSICALLY
   INVESTMENT, LLC,                 DISABLED PERSONS PER FEDERAL AND
15                                  CALIFORNIA STATUTES (including CIVIL
                                    CODE §§ 51, 52, 54, 54.1, 54.3 and 55; and
16      Defendants.                 HEALTH & SAFETY CODE §§ 19953 *et seq.)*;
                                    INJUNCTIVE RELIEF PER TITLE III,
17                                  AMERICANS WITH DISABILITIES ACT OF
                                    1990 (including 42 USC §§ 12181 *et seq.*)
18
                                    DEMAND FOR JURY TRIAL
19

20      Plaintiffs ARTHUR RENOWITZKY and DEWAYNE JACKSON complain of

21 Defendants TS GURL, INC. and TS GURL INVESTMENTS, LLC, and each of them, and

22 alleges as follows:

23      1.    **INTRODUCTION:**  Tommy T's is a restaurant, bar and comedy club that hosts

24 hundreds of members of the public at a time for drinks, food, and comedic entertainment.

25 Unfortunately, the Club also has zero accessible toilet stalls and no accessible sinks for disabled

26 persons to use.  It also is so crowded with tables and chairs that it is hard for disabled persons to

27 navigate and lacks accessible seating.  The lack of access caused Plaintiff Arthur Renowitzky to

28 experience a humiliating bodily functions accident on July 2, 2021. It also forced Plaintiff

                                    1

Dewayne Jackson to twice use the restroom in the gas station across the street from the Club on August 28, 2019, and August 19, 2021. ***After the lawsuit was filed and in direct retaliation for it, Defendants' agent, "Johnny T," communicated rumors about Plaintiff Jackson to other comedians about the suit, then contacted Plaintiff Jackson directly and told him he could never return to the club because of the lawsuit***. Johnny T also attempted to enlist other comedians as his agents to pressure Plaintiff Jackson to resolve the lawsuit without fixing the inaccessible conditions.

2.      It should never have been this way.  Defendants performed an interior remodel in 2006 worth over $30,000.  Defendants' predecessors-in-interest renovated the restrooms in 1995 and performed another alteration in 1974.  Each of these alterations required Defendants to make the restrooms fully accessible.  As a result of these and other multiple barriers, disabled Plaintiffs Arthur Renowitzky and Dewayne Jackson were unable to meaningfully access and enjoy the Tommy T's Comedy House located in Pleasanton, California.

3.      Moreover, Plaintiff Jackson, a performing comedian as well as a patron at the Club in years prior to the incidents complained of herein, gave specific notice to the Defendants that the Club's restrooms were inaccessible.  He told Defendants' manager and/or owner, on information and belief "Tommy T," that because of the lack of accessible restrooms at the club he was forced to go across the street to use the toilet.  Defendants' owner responded to Plaintiff Jackson's complaints by indicating he would not fix the restroom. He sarcastically stated, "Sue me."

4.      On separate visits to the subject premises, each disabled Plaintiff encountered barriers to access such as a lack of accessible restrooms, inaccessible paths of travel, and inaccessible seating.  Each Plaintiff was unable to use the men's restroom at the Comedy Club due to the size of the toilet stall and inaccessible features inside the restroom.  Specifically, the insufficient size of the restroom stall meant that Plaintiff Arthur Renowitzky was forced to choose between having a defecation accident or attempting a very dangerous transfer onto the toilet from his wheelchair in public view, which might have still had the same humiliating result in addition to a physical injury.  The same inaccessible conditions caused Plaintiff Dewayne Jackson to leave

2

Tommy T's to use the restroom at a gas station down the street so that he did not experience a bodily functions accident himself.

5. Each Plaintiff came to the filing attorneys' office independently to complain of their separate incidents of discrimination that each suffered as a result of Defendants' inaccessible premises. Plaintiffs' counsel determined that the due to the causal similarities of each Plaintiff's discriminatory experience the most efficient way forward was to file one Complaint on behalf of both Plaintiffs against the common Defendants despite the two Plaintiff's separate and unrelated encounters at the subject premises.

6. Defendants denied disabled Plaintiffs Arthur Renowitzky and Dewayne Jackson accessible public facilities at the Tommy T's Comedy House located at 5104 Hopyard Road, Pleasanton, California. Plaintiffs Arthur Renowitzky and Dewayne Jackson are each a "person with a disability" or "physically handicapped person" who requires the use of a wheelchair for locomotion. Each is unable to use portions of public facilities which are not accessible to mobility disabled persons. Plaintiffs were each denied their rights to full and equal access at Tommy T's. They were denied their civil rights under both California law and federal law, and they continue to have their rights denied, because these facilities were not, and are not now, properly accessible to physically disabled persons, including those who use assistive devices for mobility.

7. Plaintiffs seek injunctive relief to require Defendants to make these facilities accessible to disabled persons and to ensure that any disabled person who attempts to patronize the subject premises will be provided accessible facilities. Plaintiffs also seek recovery of damages for their discriminatory experiences and denial of access and of civil rights, which denial is continuing because of Defendants' failure to provide disabled accessible facilities. Plaintiffs also seek recovery of reasonable statutory attorney fees, litigation expenses and costs, under federal and state law.

8. **JURISDICTION:** This Court has jurisdiction of this action pursuant to 28 USC section 1331 for violations of the Americans with Disabilities Act of 1990, 42 USC sections 12101 *et seq.* Pursuant to pendant jurisdiction, attendant and related causes of action arising from the same facts are also brought under California law, including but not limited to

3

violations of Health & Safety Code sections 19953-19959; California Civil Code sections 51, 52, 54, 54.1, 54.3 and 55; and Title 24 California Code of Regulations, the California State Building Code.

9. **VENUE:** Venue is proper in this court pursuant to 28 USC section 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiffs' causes of action arose in this district.

10. **INTRADISTRICT:** This case should be assigned to the Oakland intradistrict as the real property which is the subject of this action is located in this intradistrict and Plaintiffs' causes of action arose in this intradistrict.

11. **PARTIES:** Plaintiff Arthur Renowitzky is a paraplegic and a "person with a disability" or "physically handicapped person" who requires the use of a wheelchair for locomotion. He has no feeling from the chest down. He is unable to use portions of public facilities which are not accessible to mobility disabled persons, including those who require the use of a wheelchair. Plaintiff Renowitzky is entitled by permit from the State of California to park any vehicle which he drives or is transported in, in a designated and properly configured disabled accessible parking space.

12. Plaintiff Dewayne Jackson is a "qualified" physically disabled person who must use a wheelchair for ambulation due to paraplegia. He does not have feeling in his legs. He is unable to use portions of public facilities which are not accessible to mobility disabled persons, including those who require the use of a wheelchair. Plaintiff Jackson has been issued a California state placard for disabled parking which entitles him to park in a properly configured disabled accessible parking space.

13. Defendants TS GURL, INC. and TS GURL INVESTMENTS, LLC, are and were the owners, operators, lessors and/or lessees of the subject business, property and buildings at all times relevant to each incident described in this Complaint. Plaintiffs are informed and believe that each of the Defendants herein is the agent, employee, or representative of each of the other Defendant, and each performed all acts and omissions stated herein within the scope of such agency or employment or representative capacity and is responsible in some manner for the acts

4

and omissions of the other Defendants in proximately causing the damages complained of herein.

14.     Tommy T's Comedy Club is a place of "public accommodation" and "business establishment" subject to the requirements of multiple categories of 42 USC section 12181(7) of the Americans with Disabilities Act of 1990; of California Health & Safety Code sections 19953 *et seq.*; of California Civil Code sections 51 *et seq.*; and of California Civil Code sections 54 *et seq.*  On information and belief, the Tommy T's Comedy Club buildings and its facilities were built after July 1, 1970, and since then have undergone construction and/or "alterations, structural repairs, or additions," subjecting each such facility to disabled access requirements per Health & Safety Code sections 19955-19959 *et seq.*, and, as to construction and/or alterations since January 26, 1993, to the disabled access requirements of section 12183 of the Americans with Disabilities Act of 1990.  Such facilities constructed or altered since 1982 are also subject to "Title 24," the California State Architect's Regulations, also known as the California Building Code.  Further, irrespective of the alteration history, such premises are subject to the "readily achievable" barrier removal requirements of Title III of the Americans with Disabilities Act of 1990, as defined by the ADA. 42 USC § 12181(9).

**FIRST CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES  IN A PUBLIC ACCOMMODATION**
**(California Health & Safety Code §§ 19955 *et seq.*, Civil Code §§ 54 *et seq.*)**

15.     Plaintiffs replead and incorporate by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 14, above, and incorporates them herein by reference as if separately repled hereafter.

16.     Plaintiffs Arthur Renowitzky and Dewayne Jackson and other similarly situated physically disabled persons, including those who require the use of a wheelchair, are unable to use public facilities on a "full and equal" or meaningful basis unless each such facility is in compliance with the provisions of California Health & Safety Code sections 19955 -19959. Plaintiffs are members of that portion of the public whose rights are protected by the provisions of Health & Safety Code sections 19955 *et seq.*  Further, Plaintiffs are also protected against

5

policy and architectural barrier discrimination by California Civil Code sections 54 and 54.1, the "Disabled Persons Act." "Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places." Civil Code § 54(a). Furthermore, "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, . . . places of public accommodation, amusement, or resort, and other places to which the general public is invited." Civil Code § 54.1(a). Additionally, any violation of the ADA, including but not limited to any violation of 42 USC sections 12182 and 12183, is also incorporated as a violation of the Disabled Persons Act. Civil Code §§ 54(c), and 54.1(d).

17.     Title 24, California Code of Regulations, formerly known as the California Administrative Code and now also known as the California Building Code, was in effect at the time of each alteration which, on information and belief, occurred at such public facility since January 1, 1982, thus requiring access complying with the specifications of Title 24 whenever each such "alteration, structural repair or addition" was carried out. On information and belief, Defendants and/or their predecessors in interest carried out new construction and/or alterations, structural repairs, and/or additions to such buildings and facilities during the period Title 24 has been in effect. Further, Plaintiffs allege, on information and belief, that construction, alterations, structural repairs, and/or additions which triggered access requirements at all relevant portions of the Tommy T's, also occurred between July 1, 1970, and December 31, 1981, and required access pursuant to the A.S.A. (American Standards Association) Regulations then in effect, pursuant to the incorporated provisions of California Government Code sections 4450 *et seq.* Further, on information and belief, additions to the building after the initial construction also occurred after January 1, 1972, triggering access requirements per Health and Safety Code section 19959, and as to alterations or additions after January 26, 1993, triggering ADA liability and requirements per 42 USC sections 12182 and 12183 of the ADA.

18.     **FACTUAL STATEMENT AS TO PLAINTIFF ARTHUR RENOWITZKY**: Plaintiff Arthur Renowitzky founded the Life Goes on Foundation in 2008, "a non-political, non-

6

profit organization," created to "provide [spinal cord injury] survivors and their families

with support to aid in the life-long process towards recovery." See https://www.lgof.org/about_us.

The Life Goes on Foundation works "nationally to advance the personal independence and

wellness of individuals living with disabilities."  Plaintiff Renowitzky prides himself on not just

his independence but on empowering other disabled persons, including coaching for the Junior

Warriors children's wheelchair basketball team.  A news report video depicting the charity work

that Plaintiff Renowitzky has done and his interactions with several NBA Warriors players can be

seen here: https://abc7news.com/community-events/paralyzed-dubs-fan-inspires-community-and-

the-warriors/5264759/.

19.    Plaintiff Renowitzky is a disabled person resulting from a spinal cord injury that

he suffered because of a random act of gun violence by a stranger in 2008. His spinal cord

between the T2 and T3 vertebrae is severed. He has no feeling from his chest downward and is

unable to walk or climb stairs. He uses a manual wheelchair and has good upper body strength

from working out and playing wheelchair basketball. In order to perform basic bodily restroom

functions and relieve himself, he must use and change his disposable catheter on a regular

schedule to avoid infections when urinating and uses other personal medical equipment when

defecating.  His body signals to him when he needs to relieve himself, including warmth in his

stomach, twitching, and sweating.  Plaintiff Renowitzky has learned to interpret these signals and

must use the restroom within 5 to 10 minutes of noticing them to avoid experiencing a bodily

functions accident.  He relies on businesses and other public places to provide accessible restroom

facilities which are large enough so that he can carry out these functions in a regular and timely

manner.

20.    Plaintiff Renowitzky made plans to go to Tommy T's Comedy Club on July 2,

2021, to meet two of his best friends who he had not been able to see in person for the last

eighteen months due to the Covid-19 pandemic.  The three were very excited to see each other

and attend the Kabeezy & Friends comedy show.  Plaintiff Renowitzky had purchased advanced

tickets for the show online.

21.    On July 2, 2021, Plaintiff Renowitzky drove himself to the Tommy T's Comedy

7

Club in his disabled licensed vehicle.  He parked in a designated accessible parking space.
Plaintiff Renowitzky arrived early, so after exiting his vehicle, he pushed himself to a nearby gas
station to make a purchase.  He then pushed himself back to Tommy T's Comedy Club.  Plaintiff
Renowitzky noticed that there was no sidewalk leading from the public right of way to Tommy
T's, so he had to travel in the vehicular path of travel to get to the door of the club.  Additionally,
Plaintiff Renowitzky found traversing the parking lot difficult due to the multitude of cracks and
potholes in the parking lot pavement.

22.     Plaintiff Renowitzky arrived at the front entrance to Tommy T's Comedy Club,
waited in line to get in, then showed his ticket to the host when he was at the front of the line.
Plaintiff Renowitzky looked at the seating options, and not seeing any obviously designated
accessible seating, he asked the host where the best place for him to sit would be.  The host asked
Plaintiff Renowitzky to wait for a moment because they would have to move tables and chairs
around to accommodate him.  Plaintiff Renowitzky attempted to place himself as out of the way
of other patrons as possible.  Waiting for Defendants' employees to move furniture around so that
he could have a place to sit caused him unwanted attention and embarrassment.

23.     Eventually, Defendants' staff showed him and the rest of his group to a table, and
everyone ordered some food and drinks.  The group settled in to enjoy the show and each other's
company.

24.     During the second comedian's set, Plaintiff Renowitzky began to recognize the
signals that his body gives him when he needs to defecate, so he excused himself to go to the
restroom.  Once Plaintiff Renowitzky recognizes the signal from his body, he knows that he has
only a limited amount of time to get to a restroom in order to carry out his bodily functions, so he
went directly to the restroom.  Unfortunately, when he arrived in the men's restroom, he saw that
the toilet stall was totally inaccessible.

25.     Although the restroom itself was quite large, the toilet stall itself was not much
bigger than a closet situated in an alcove surrounded by three walls.  Plaintiff Renowitzky could
barely maneuver his chair at a diagonal to get his feet past the threshold of the stall.  Most of his
body was left outside of the stall in plain view of multiple patrons entering and exiting the

8

restroom at the busy event.  There was insufficient room to attempt a side transfer from his

wheelchair to the toilet, which is his regular practice as it is the safest way for him transfer.

26.     Plaintiff Renowitzky faced a terrible and impossible choice the law should protect

him from having to make.  Either defecate on himself in his wheelchair in public, or attempt a

dangerous front transfer that, assuming he made the jump to the toilet at all, would leave the stall

door open and expose himself to other patrons as he defected.

27.     A front transfer meant that he had to have his wheelchair facing the toilet, then use

the grab bar and the toilet itself to pull himself forward and turn around in mid-air so that he

could land on the toilet facing the correct way.  This is a dangerous maneuver, and under normal

circumstances Plaintiff Renowitzky would never attempt it.  Had he fallen, he could have injured

himself severely, and would have likely defecated on himself anyway.  However, his need to use

the restroom was now an emergency situation.  Fortunately, he made the transfer to the toilet

successfully, but the small size of the stall made it so that he was unable to close the door because

his wheelchair was protruding from the stall.  Plaintiff Renowitzky thus had to defecate and

change his urinary catheter with the door to the toilet stall wide open and in full view of other

patrons who entered the restroom while he was carrying out this private personal care.  The

patrons were glancing at Plaintiff Renowitzky with curiosity or confusion, all of which caused

him significant humiliation.

28.     Once Plaintiff Renowitzky had carried out his bodily functions, he then had to

make the same dangerous front transfer back into his wheelchair from the toilet, which he did

successfully.  As he swung back into his chair, Plaintiff Renowitzky noticed that he had gotten

some bodily waste material on his clothing in his rush to complete this private bodily function.

29.     Plaintiff Renowitzky went to the sink to wash his hands and try to clean his

clothes, but he was unable to access the sink or the soap.  The sink was too high and the cabinets

under it made it impossible to reach the faucet or the soap dispenser.  It is extremely important for

Plaintiff Renowitzky to keep himself and his hand clean because he is susceptible to infections if

he does not when changing his catheter.  He did his best to clean himself up with hand sanitizer

that he carries with him, but hand sanitizer is no substitute for soap and hot water.

9

30.     Plaintiff Renowitzky left the restroom and returned to his table, but he could not enjoy the rest of the show due to the constant worry about the possibility of having to use the restroom again.  He also worried that he may have smelled of the bodily waste, bringing him further humiliation.  However, he did not want to make a scene in front of his friends to just leave the show immediately.  After the comedian that was performing finished his set, Plaintiff Renowitzky let his friends know that he was going home.  He was sad to leave, because he had barely had a chance to catch up with his friends, but he could not risk having to use the restroom again, so he left.  Plaintiff Renowitzky left feeling humiliated at having had to carry out such a private function in front of other patrons of Tommy T's Comedy Club.

31.     **FACTUAL STATEMENT AS TO PLAINTIFF DEWAYNE JACOKSON**: Plaintiff Jackson is a disabled person resulting from an incomplete L2-L3 spinal cord injury that he suffered as a result of a gunshot in 2004.  He is unable to stand, walk or climb stairs. He uses a manual wheelchair and has good upper body strength from working out.  He relies on businesses and other public places to provide accessible restroom facilities so that he can carry out these functions in a regular and timely manner.

32.     Plaintiff Jackson is a professional standup comedian. He has been performing his act for approximately 20 years.  He has performed at comedy clubs all over the California as well as in other parts of the United States.  He has performed at Tommy T's Comedy Club in Pleasanton many times over the years both as a paid comedian and during open mic nights.  In addition to performing, Plaintiff Jackson also loves to watch other comedians perform.  He has also been a patron of Tommy T's Comedy Club many times.

33.     On August 28, 2019, Plaintiff Jackson attended, as a patron, the "Stop, Drop & Roll" comedy fundraiser for back-to-school supplies sponsored by Pleasanton Firefighters and hosted at Tommy T's Comedy Club.  Upon arriving at the event, Plaintiff Jackson found it difficult to locate a seat that was accessible to him in his wheelchair because many of the tables were too high to pull his wheelchair up to, and the tables which were low enough for him to pull up to in his wheelchair were difficult to reach due to the small size of the aisles and minimal maneuvering space between the tables and chairs.

10

34.    While Plaintiff Jackson was at the event, he needed to use the restroom.  Based on his prior experiences at Tommy T's Comedy Club, he knew that the restrooms were not accessible and that he was unable to use them safely and with privacy, so he left the venue and pushed himself to a nearby gas station so that he could use an accessible restroom.  Plaintiff Jackson had to miss some of the comedy acts due to the time that it took him to get to the gas station and back.

35.    After a long hiatus from going to comedy clubs due to the Covid-19 Pandemic, Plaintiff Jackson returned to Tommy T's Comedy Club on August 19, 2021.  He was invited to attend a friend's movie premiere of "Vampire in Oakland."  Originally, Plaintiff Jackson had planned to attend as a guest, but at the last minute, his friend asked him to perform a comedy set prior to the movie screening.  Plaintiff Jackson agreed to perform.

36.    Plaintiff Jackson arrived at Tommy T's Comedy Club a prior to his set.  He did not have to pay admission because he was performing.  Upon entering he went to the back of the venue near the area where waitresses retrieve drinks for dining patrons.  Based upon his prior experience at Tommy T's Comedy Club, Plaintiff Jackson knew that this area would provide him the most space in his wheelchair.  He was unable to pull up to a table because all the tables in the back are too high to use in a wheelchair.  However, he did order some food and a drink from a passing waitress which he was able to consume prior to his performance.

37.    When it was Plaintiff Jackson's turn to perform, he began to make his way toward the stage.  Unfortunately, it was very difficult for him to maneuver his wheelchair between the tables, and he had to ask several patrons to move so that he could get to the stage.  Upon arriving at the foot of the stage, Plaintiff Jackson then had to request the assistance of a few friends to lift him onto the stage because the only way to reach the stage is to climb stairs.  Plaintiff Jackson was lifted onto the stage by his friends, he performed, and then he had to be lifted down from the stage again.  Anytime he must be lifted in his wheelchair it causes him anxiety, discomfort, and embarrassment.  Plaintiff Jackson prides himself on his independence, and he does not like to ask for or receive assistance unless it is necessary.  Being lifted in his wheelchair also creates a spectacle, unwanted attention, and the anxiety that he could be dropped and injured.

11

38.     Plaintiff Jackson returned to his place in the back of Tommy T's to enjoy the rest of the movie premier.  During the movie, Plaintiff Jackson had to use the restroom.  He knew from his prior experiences at Tommy T's Comedy Club that the restroom was not accessible to him, but he hoped that Defendants had made some improvements to the club since his last visit. He checked to see if the restrooms were accessible to him.  Disappointingly, Plaintiff Jackson found that the restrooms were in the same inaccessible condition that they had been on his prior visits.

39.     Plaintiff Jackson had considered the possibility that Defendants' restroom would still be inaccessible to him, so he left himself sufficient time to push to the gas station to use the restroom as he had done in the past.  The embarrassment of being forced to leave the venue to use the restroom made him feel like a second-class citizen, where others were able to use the restroom at the facility.  Plaintiff Jackson left the venue, pushed himself to the gas station, used the accessible restroom, and returned to Tommy T's for the remainder of the movie premiere.  Again, he missed part of the event so that he could use an accessible restroom in a different location. Plaintiff Jackson's experiences at Tommy T's caused him difficulty, discomfort and embarrassment, all to his damages.

40.     **FACTS ABOUT DEFENDANTS' RETALIAITON FOR LAWSUIT:** On or about September 9, 2021, Plaintiff received a text from another comedian[1] colleague who indicated that "Johnny T," (on information and belief the son of an owner of the subject premises and business "Tommy T") had asked for Plaintiff Jackon's number and wanted to speak with Plaintiff.  The comedian did not know what Johnny wanted to discuss.  Shortly thereafter Plaintiff received a call from Johnny T.

41.     Johnny T told Plaintiff that he had received a lawsuit in the mail and that he recognized Plaintiff Jackson's name.  He forcefully expressed his discontent and anger with Plaintiff Jackson and with the lawsuit.  He alleged that he believed he and Jackson "were brothers," and that they "could have resolved this another way" and that they "could have come to

---

[1] To protect against further reprisal, the names of colleague comedians are being kept anonymous until such time as the retaliation ceases or the disclosure is otherwise required by law.

an agreement." Johnny T did not offer to make the restrooms and premises accessible. Plaintiff Jackson told Johnny T he did not want to talk about the lawsuit with him.  At the end of the phone call, Johnny T told Plaintiff he was not welcome to return to the club.

42.     After the phone call had ended, Plaintiff spoke again with the comedian who had texted him just before the conversation with Johnny.  The comedian told Plaintiff that Johnny was angry about the lawsuit, and that Johnny wanted he, the comedian, to help resolve the matter.  On information and belief, the comedian feared professional reprisal from Johnny T if he did not communicate and try to persuade Plaintiff to resolve the lawsuit. Plaintiff told the colleague that he did not want the colleague in the middle, and that they should just drop talking about it.

43.     On or about September 20, 2021, Plaintiff Jackson received a phone call from another, different comedian colleague who warned Plaintiff that "Johnny T," had been talking about Plaintiff Jackson and the lawsuit in a negative light with other comedians.  The colleague further warned Plaintiff Jackson that Johnny T was angry, wanting him to try to persuade Jackson to settle the lawsuit informally. All these efforts were attempts to circumvent Plaintiff's wish that he and Johnny do not talk about the lawsuit.  Plaintiff Jackson felt coerced by Johnny to drop the lawsuit.  The rumors also damaged Plaintiff Jackson's reputation.  He also felt pressure to drop the lawsuit in order to stop Johnny from spreading further rumors to other comedians.  On information and belief, Johnny's status as the club manager and/or owner, coerced others, as his agents, to pressure Plaintiff Jackson to settle or drop the lawsuit without providing an accessible restroom or prove access generally at the premises.  Johnny T did so when those overtures were explicitly unwelcomed and already declined by Plaintiff.  The pressure to resolve the dispute occurred even as there had been no changes to the physical premises to make it accessible so that Plaintiff Jackon and other disabled persons could use it.

44.     Plaintiff Renowitzky is aware of the retaliation against his co-plaintiff and is similarly deterred from returning to the premises based on his association with Plaintiff Jackson and his participation in the lawsuit.

45.     **FACTS REGARDING BUILDING ALTERATION HISTORY:** The building permit history of the Club shows that the premises was constructed and/or substantially renovated

13

in 1974.  The restroom itself was altered in 1995 including changing the configuration of the walls, making the sink accessible (which was not done), moving of partition walls, and moving of doors. The restroom was not made accessible and remains inaccessible.  Finally, in approximately 2006 Defendants themselves undertook an interior remodel of the premises that they estimated for the building department would cost $30,000, but Defendants failed to provide accessible restrooms during this or any of the renovations.

46.     The above referenced barriers to access are listed without prejudice to Plaintiffs citing additional barriers to access by an amended complaint after inspection by Plaintiffs' access consultant. *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011); *Doran v. 7-Eleven, Inc.* 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F.3d 939 (9th Cir. 2011).  All of these barriers to access render the premises inaccessible to physically disabled persons who are mobility impaired, such as Plaintiffs, and are barriers that each Plaintiff may encounter when he returns to the premises.  All facilities must be brought into compliance with all applicable federal and state code requirements, according to proof.

47.     Further, each and every violation of the Americans with Disabilities Act of 1990 also constitutes a separate and distinct violation of California Civil Code section 54(c) and 54.1(d), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code sections 54.3 and 55.

48.     **INJUNCTIVE RELIEF:**  Plaintiffs seek injunctive relief to prohibit the acts and omissions of Defendants as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiffs and other members of the public who are physically disabled, including but not limited to wheelchair users, from full and equal access to these public facilities.  Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiffs in that these actions continue to treat Plaintiffs as inferior and second-class citizens and serve to discriminate against them on the sole basis that they are each a person with disabilities who requires the use of a wheelchair for movement in public places. Specifically, removal of the bathroom stall partition and replacement of the sink would provide ample space for a single accommodation restroom.  Such alterations, on information and belief,

14

would not be very expensive or difficult to do in order to provide a fully accessible restroom. Similarly, providing grab bars and adding a lock to the bathroom entrance would be easy to accomplish and would provide accessible features in the restroom.  Such work could likely be accomplished for less than $10,000 and would not require building permits.

49.     Plaintiffs are deterred from returning to use these facilities, because the lack of access will foreseeably cause them further difficulty, discomfort and embarrassment, and Plaintiffs are unable, so long as such acts and omissions of Defendants continue, to achieve equal access to and use of these public facilities.  Therefore, Plaintiffs cannot return to patronize Tommy T's Comedy House and its facilities and are deterred from further meaningful and enjoyable patronage until these facilities are made properly accessible for disabled persons. Plaintiffs both enjoy standup comedy and know standup comedians who perform throughout the bay area. Each Plaintiff will return to the subject premises if it is made accessible to see comedy shows.

50.     The acts of Defendants have proximately caused and will continue to cause irreparable injury to Plaintiffs if not enjoined by this Court.  Plaintiffs seek injunctive relief as to all inaccessible areas of the premises that each Plaintiff has personally encountered, and, as to all areas identified during this litigation by Plaintiffs' access consultant, that they or other similarly disabled persons may encounter in the future. *Doran v. 7-Eleven, Inc.,* 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F. 3d 939 (9th Cir. 2011); *Oliver v. Ralphs Grocery* Co., 654 F.3d 903 (9th Cir. 2011).   As to those of the Defendants that currently own, operate, and/or lease (from or to) the subject premises, Plaintiffs seek preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices and barriers that deny full and equal access for disabled persons, and for reasonable statutory attorney fees, litigation expenses and costs.

51.     Wherefore Plaintiffs ask this Court to preliminarily and permanently enjoin any continuing refusal by Defendants to grant full and equal access to Plaintiffs in the ways complained of and to require Defendants to comply forthwith with the applicable statutory requirements relating to access for disabled persons.  Such injunctive relief is provided by

15

California Health & Safety Code section 19953, California Civil Code section 55, and other law. Plaintiffs further request that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Health & Safety Code section 19953, Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

52.     **DAMAGES:**  As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendants and each of them in owning, operating, leasing, constructing, altering, and maintaining the subject facilities, Plaintiffs have each suffered a violation of his civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and each has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to his damages per Civil Code section 54.3, including general and statutory damages, and treble damages, as hereinafter stated.  Defendants' actions and omissions to act constitute discrimination against Plaintiffs on the basis that they were and are physically disabled and unable, because of the architectural, policy and other barriers created and/or maintained by the Defendants in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.  The violations have deterred Plaintiffs from returning to attempt to patronize the Tommy T's Comedy Club and will continue to cause each of them damages so long as these barriers to access continue to be present, according to proof.

53.     **TREBLE DAMAGES:**  Plaintiffs have each been damaged by Defendants' wrongful conduct and seek the relief that is afforded by Civil Code sections 54, 54.1, and 54.3. On information and belief, at all times herein mentioned, Defendants were fully aware that significant numbers of potential users of their public facilities were and are and will be physically disabled persons, including wheelchair users and other mobility-impaired persons, and would have need of facilities that complied with California Title 24 and ADAAG standards for accessible facilities.  They were also specifically notified by Plaintiff Jackson of the inaccessible restroom.  Despite this knowledge, Defendants installed and maintained the physical barriers complained of, and failed to remove these barriers, and have failed to provide properly accessible facilities or cease discriminatory policies, including but not limited to those previously noted

16

hereinabove, as required by state and federal law.  On information and belief, Defendants have ignored complaints about the lack of proper disabled access by Plaintiffs and by other disabled persons.  In approximately 2011, Plaintiff Jackson complained about the inaccessible restrooms to Defendants.  Defendants' response was "Sue me!"  Plaintiff Jackson did not formally complain to the Court at the time for fear of reprisal and being excluded from future events at the Club. Defendants have intentionally continued their illegal and discriminatory practices despite actual knowledge that persons with physical mobility disabilities may attempt to patronize Tommy T's Comedy Club and encounter illegal barriers which deny them full and equal access when they do so.  Furthermore, in direct retaliation for this lawsuit, Defendants banned Plaintiff Jackson from returning to the club, and spread rumors and negative statements about Jacksosn to other comedians who perform at Tommy T's.

54.     At all times herein mentioned, Defendants knew, or in the exercise of reasonable diligence should have known, that their barriers and practices at the subject facilities violated disabled access requirements and standards, and would have a discriminatory effect upon Plaintiffs and upon other physically disabled persons, but Defendants have failed to rectify the violations, and presently continue a course of conduct of maintaining architectural and policy barriers that discriminate against Plaintiffs and similarly situated disabled persons.  For the foregoing reasons, Plaintiffs allege that an award of statutory treble damages is appropriate.

55.     **FEES AND COSTS:**  As a result of Defendants' acts, omissions, and conduct, Plaintiffs have been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiffs' rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiffs therefore seek recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55, and California Health & Safety Code section 19953.  Additionally, Plaintiffs' lawsuit is intended to require that Defendants make their facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

17

WHEREFORE, Plaintiffs pray for damages and injunctive relief as hereinafter stated.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE**
**SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS**
**INCORPORATED BY CIVIL CODE SECTION 51(f)**

56.     Plaintiffs re-plead and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 55 of this Complaint and incorporates them herein as if separately re-pleaded.

57.     At all times relevant to this complaint, California Civil Code section 51 has provided that physically disabled persons are free and equal citizens of the state, regardless of medical condition or disability:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, *disability, or medical condition* are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Civil Code § 51(b). [Emphasis added.]

58.     California Civil Code section 52 provides that the discrimination by Defendants against Plaintiffs on the basis of his disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

59.     Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

60.     Any violation of the Americans with Disabilities Act of 1990 (as pled in the third cause of action) constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under

18

the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

61.     The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described public facilities by physically disabled persons within the meaning of California Civil Code sections 51 and 52.  As a proximate result of Defendants' action and omissions, Defendants have discriminated against Plaintiffs in violation of Civil Code sections 51 and 52, and are responsible for statutory, compensatory and treble damages to Plaintiff, according to proof.

62.     **FEES AND COSTS:**  As a result of Defendants' acts, omissions and conduct, Plaintiffs have been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiffs' rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiffs therefore seek recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52.  Additionally, Plaintiffs' lawsuit is intended to require that Defendants make their facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

WHEREFORE, Plaintiffs pray for damages and injunctive relief as hereinafter stated.

**THIRD CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**42 USC §§ 12101** *et seq*

63.     Plaintiffs re-plead and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 62 of this Complaint and incorporates them herein as if separately re-pleaded.

64.     In 1990 the United States Congress made findings that laws were needed to more fully protect "some 43,000,000 Americans [with] one or more physical or mental disabilities;" that "historically, society has tended to isolate and segregate individuals with disabilities;" that

19

"such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;" that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;" and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous..." 42 U.S.C. §12101.

65.     Plaintiffs are each a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

66.     In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

67.     As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to "a restaurant, bar, or other establishment serving food or drink" (42 USC § 12181(7)(B)) and any "place of exhibition or entertainment" (42 USC § 12181(7)(C)).

68.     The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

20

or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendants set forth herein were in violation of Plaintiffs' rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

69.     The removal of each of the physical barriers complained of by Plaintiffs as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA.  As noted hereinabove, removal of each and every one of the architectural and/or policy barriers complained of herein were already required under California law.  Further, on information and belief, alterations, structural repairs or additions since January 26, 1993, have also independently triggered requirements for removal of barriers to

21

access for disabled persons per section 12183 of the ADA.  In the event that removal of any

barrier is found to be "not readily achievable," Defendants still violated the ADA, per

section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and

accommodations through alternative methods that were "readily achievable."

70.     The ability to use a restroom is a fundamental necessity of accessing and using a

comedy club which serves food and drinks. Therefore, the benefits of creating a restroom with

accessible features do not exceed the costs of readily achievable barrier removal. These costs are

fundamental to doing business, like any other essential function of operating a comedy club, bar,

or restaurant, such as the costs of as ensuring fire safety.  It is thus readily achievable to remove

these barriers.

71.     On information and belief, as of the dates of Plaintiffs' encounters at the premises

and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have

denied and continue to deny full and equal access to Plaintiffs and to other mobility disabled

persons in other respects, which violate Plaintiffs' right to full and equal access and which

discriminate against Plaintiffs on the basis of their disabilities, thus wrongfully denying to

Plaintiffs the full and equal enjoyment of the goods, services, facilities, privileges, advantages and

accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

72.     Defendants' actions continue to deny Plaintiffs' rights to full and equal access by

deterring Plaintiffs from patronizing Tommy T's Comedy Club and discriminated and continue to

discriminate against them on the basis of their disabilities, thus wrongfully denying to Plaintiffs

the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and

accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

73.     Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.*,

Plaintiffs Arthur Renowitzky and Dewayne Jackson are entitled to the remedies and procedures

set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiffs are

being subjected to discrimination on the basis of their disabilities in violation of sections 12182

and 12183 of this title.  On information and belief, Defendants have continued to violate the law

and deny the rights of Plaintiffs and other disabled persons to "full and equal" access to this

22

public accommodation since on or before Plaintiffs' encounters.  Pursuant to section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

74.     Plaintiffs seek relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990.  Plaintiffs Arthur Renowitzky and Dewayne Jackson are each a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing he will be subjected to such discrimination each time that he may use or attempt to use the property and premises, or attempt to patronize Tommy T's Comedy Club, in light of Defendants' policies and physical premises barriers.

WHEREFORE, Plaintiffs request relief as outlined below.

### FOURTH CAUSE OF ACTION:
### VIOLATION OF TITLES III AND IV OF THE AMERICANS WITH DISABILITIES ACT FOR RETALIATION

75.     Plaintiffs re-plead and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 74 of this Complaint and incorporates them herein as if separately re-pleaded.

76.     The ADA specifically prohibits retaliation or coercion in respond to an individual's enforcement of the ADA in filing a lawsuit or proceeding under it.  The text of the ADA in Title IV provides for:

> Prohibition against retaliation and coercion

> (a) Retaliation

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

> (b) Interference, coercion, or intimidation

23

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42. USC § 12203.

77.     Regulations promulgated by the Department applicable to this case and the retaliation engaged in by Defendants further specify that:

Retaliation or coercion.

(a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.

(b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

(c) Illustrations of conduct prohibited by this section include, but are not limited to:

(1) Coercing an individual to deny or limit the benefits, services, or advantages to which he or she is entitled under the Act or this part;

(2) Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation;

(3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or

(4) Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part.

28 CFR § 36.206.

78.     Defendants and/or their agents specifically banned and blacklisted Plaintiff Jackson from returning to their premises because he had filed a lawsuit to make the premises accessible.  This ban also constructively banned Plaintiff Renowitzky from returning to the club given the evidence of not welcoming his co-Plaintiff Jackson to return.  Defendants' actions were a clear violation of the anti-retaliation sections of the ADA and associated regulations, particularly because Johnny T used his status and power within the club to retaliate against

24

Plaintiff Jackson by spreading rumors about him and the lawsuit to other comedians, and by ignoring Plaintiff Jackson's request that Johnny not talk to him about the lawsuit or enlist others to do so on Johny T's behalf.

79. All of these actions and retaliations worsened actual damages and deterrence under California law as incorporated violations of the ADA. See Cal. Civ. Code §§ 51(f), 52.

### **PRAYER**

Plaintiffs have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiffs are granted the relief they request. Plaintiffs and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiffs ARTHUR RENOWITZKY and DEWAYNE JACKSON pray for judgment and the following specific relief against Defendants:

1. Issue a preliminary and permanent injunction directing Defendants as current owners, operators, lessors, and/or lessees of the subject property and premises to modify the above described property, premises, policies and related facilities to provide full and equal access to all persons, including persons with physical disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendants to provide facilities usable by Plaintiffs and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided; to cease any discriminatory policies, and to train Defendants' employees and agents in how to recognize disabled persons and accommodate their rights and needs;

2. Stop all retaliation against Plaintiffs for asserting their rights under the ADA and enforcing its provisions.

3. Retain jurisdiction over the Defendants until such time as the Court is satisfied that

25

Defendants' unlawful policies, practices, acts and omissions, and maintenance of physically inaccessible public facilities and policies as complained of herein no longer occur, and cannot recur;

      4.      Award to Plaintiffs all appropriate damages, including but not limited to statutory damages, general damages, and treble damages in amounts within the jurisdiction of the Court, all according to proof;

      5.      Award to Plaintiffs all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by law;

      6.      Award prejudgment interest pursuant to Civil Code section 3291; and

      7.      Grant such other and further relief as this Court may deem just and proper.

Date: September 16, 2021                REIN & CLEFTON


                              */s/ Aaron Clefton*
By AARON CLEFTON, Esq.
Attorney for Plaintiffs
ARTHUR RENOWITZKY and DEWAYNE JACKSON


## JURY DEMAND

Plaintiffs hereby demand a trial by jury for all claims for which a jury is permitted.


Date: September 16, 2021                REIN & CLEFTON


                              */s/ Aaron Clefton*
By AARON CLEFTON, Esq.
Attorney for Plaintiffs
ARTHUR RENOWITZKY and DEWAYNE JACKSON

26